UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MAGALEEN SNIPES, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 1:16-cv-01525-TAB-TWP ) |
| NANCY A. BERRYHILL Acting Commissioner of the Social Security, | ) ) ) ) |
| Defendant. | ) |

**ORDER ON PLAINTIFF'S BRIEF IN SUPPORT OF APPEAL**

**I.     Introduction**

The parties appeared by counsel on April 12, 2017, for an oral argument on Plaintiff Magaleen Snipes' brief in support of appeal. It is undisputed that Snipes is disabled; she was awarded partial benefits. The issue is whether the Administrative Law Judge erred in his conclusion that Snipes was not disabled before April 22, 2014. After taking the case under advisement, the Court finds the ALJ erred. Snipes' brief in support of appeal [Filing No. 15] is granted, and the Commissioner's decision is reversed and remanded.

**II.    Background**

Snipes applied for Disability Insurance Benefits and Supplemental Security Income on March 8, 2011, alleging disability beginning on May 13, 2009. Snipes' claims were denied initially and upon reconsideration. On May 17, 2012, Snipes, represented by an attorney, appeared and testified at a hearing before an ALJ. Snipes returned for another hearing before the ALJ on November 6, 2012. On November 28, 2012, the ALJ issued his decision that Snipes is not disabled. The Appeals Council denied Snipes' request for review, and she sought judicial review.

At the District Court, the Commissioner stipulated to a joint remand. On March 24, 2015, the Appeals Council issued a remand order and Snipes appeared for another hearing before the ALJ on January 6, 2016. The ALJ issued a partially favorable decision on March 23, 2016, finding Snipes became disabled on April 22, 2014.

At step one, the ALJ found Snipes has not engaged in substantial gainful activity since the alleged onset date. At step two, the ALJ found Snipes' severe impairment is degenerative disc disease. At step three, the ALJ found Snipes' impairment does not meet or medically equal a listing. At step four, the ALJ found that prior to April 22, 2014, Snipes had the Residual Functional Capacity to perform light work, except

> she could stand and walk for a total of six of eight hours and sit for six of eight hours provided she had the option to alternate to a sitting or standing position for one to two minutes each hour. She could not climb ropes, ladders, or scaffolds. She could occasionally climb stairs or ramps. She could not kneel or crawl. She should avoid work at unprotected heights, working around dangerous moving machinery, operating a motor vehicle, or working around open flames or large bodies of water.

[Filing No. 17-8, at ECF p. 12.] However, the ALJ found that after April 22, 2014, Snipes only had the RFC to perform sedentary work, with

> the option to alternate to a sitting or standing position for one to two minutes each hour. She cannot climb ropes, ladders, or scaffolds. She can occasionally climb stairs or ramps. She cannot kneel or crawl. She should avoid work at unprotected heights, working around dangerous moving machinery, operating a motor vehicle, or working around open flames or large bodies of water.

[Filing No. 17-8, at ECF p. 17.]

At step five, the ALJ relied on the testimony of a vocational expert to find that prior to April 22, 2014, Snipes was capable of performing her past work as a hairstylist, as well as the work of a cashier, mail clerk, or merchandise marker. However, beginning on April 22, 2014, Snipes' RFC prevented her from being able to perform her past work or any other jobs in the

2

national economy. As a result, Snipes was awarded SSI beginning April 22, 2014, but was denied DIB because her date last insured was March 31, 2013. This appeal followed.

## III. Legal standard

The Court must uphold the ALJ's decision if substantial evidence supports his findings. [Terry v. Astrue, 580 F.3d 471, 475 (7th Cir. 2009)](). The ALJ is obligated to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of nondisability while ignoring evidence that points to a disability finding. [Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010)](). If evidence contradicts the ALJ's conclusions, the ALJ must confront that evidence and explain why it was rejected. [Moore v. Colvin, 743 F.3d 1118, 1123 (7th Cir. 2014)](). The ALJ need not mention every piece of evidence so long as he builds a logical bridge from the evidence to his conclusion. [Pepper v. Colvin, 712 F.3d 351, 362 (7th Cir. 2013)]().

## IV. Discussion

This appeal rises and falls on the ALJ's treatment of Dr. Brovender's opinion. The ALJ gave great weight to the opinion of Dr. Brovender, the medical expert who testified at the January 2016 hearing. [[Filing No. 17-8, at ECF p. 16]().] Dr. Brovender opined that Snipes was not disabled. However, as explained below, Dr. Brovender's opinion is full of troubling errors and his RFC is open to multiple interpretations. The ALJ cherry-picked Dr. Brovender's opinion and ignored evidence demonstrating that Snipes was disabled prior to April 22, 2014. Thus, remand is appropriate.

### A. Errors in Dr. Brovender's testimony

Dr. Brovender testified to several facts that were manifestly untrue. Dr. Brovender testified that Snipes' degenerative disc disease did not meet or equal the listing for 1.04 because "[s]he does not have—she didn't have a neuro-anatomic distribution of pain. She had no motor

3

loss or atrophy associated with muscle weakness, and she has no sensory or reflex changes. And she has negative straight leg raising." [Filing No. 17-8, at ECF p. 51.]

Notably, Dr. Brovender did not examine Snipes—his testimony is based on his review of her medical record. However, the medical record is at odds with Dr. Brovender's testimony. To begin, the record contains evidence of a neuro-anotomic distribution of pain. An August 20, 2010, EMG documents radiculopathy in the lower extremities with numbness, tingling, and pain affecting her lower back and into her right leg. [Filing No. 17-7, at ECF p. 9.] This EMG is a clinical finding relied on in Dr. Kuonen's medical source statement. [Filing No. 17-7, at ECF p. 99.] On March 26, 2011, the consultative doctor observed Snipes "ambulates with a slow limping gait which favors the right, which is unsteady" and that she "appears uncomfortable in the seated and supine positions; she frequently repositioned herself and changed positions," after noting that her pain has "progressively worsened to a constant right sided pain radiating to her right buttock, posterior thigh and calf to toes with weakness, numbness and tingling" that "increased with walking, standing and sitting and changes of temperature." [Filing No. 17-7, at ECF p. 16-19.] On September 12, 2012, Snipes described shooting pains down her right leg, a sensation of her leg feeling heavy when she walked, bad balance, and a burning sensation in her bilateral ankles. [Filing No. 17-7, at ECF p. 83-84.]

Other medical evidence conflicts with Dr. Brovender's testimony that she had no motor loss or atrophy associated with muscle weakness. On April 5, 2010, Dr. Kuonen ordered an MRI of Snipes' lumbar spine due to "pain with weakness on right side." [Filing No. 17-7, at ECF p. 12.] On March 26, 2011, Dr. Brater observed motor loss, including the inability to walk on the heels or toes, tandem walk, or squat as well as "weakened lower extremities R>L" and "an unsteady limping gait." [Filing No. 17-7, at ECF p. 18.] On November 9, 2011, a physical

4

therapist observed weakness with regard to flexion, extension, abduction, adduction, internal rotation, and external rotation, as well as lower joint tenderness R>L. [Filing No. 17-7, at ECF p. 52.] The therapist indicated she "demonstrates lumbopelvic disfunction and weakness to core." [Filing No. 17-7, at ECF p. 52.]

Also, evidence of Snipes' reduced sensory reflexes conflicts with Dr. Brovender's testimony that she has no reflex changes. On November 10, 2010, an attending physician observed diminished reflexes in the lower extremities [Filing No. 17-7, at ECF p. 14], and neurosurgeon Dr. Shapiro observed an "absent [A]chilles reflex on the left." [Filing No. 17-7, at ECF p. 8.] On March 26, 2011, Dr. Brater observed "abnormal patellar reflex on the right." [Filing No. 17-7, at ECF p. 18.] At an ER visit on September 6, 2011, the attending physician observed a diminished Achilles reflex. [Filing No. 17-7, at ECF p. 58.] On April 29, 2014, neurosurgeon Dr. Miller observed reduced reflexes "in the bilateral upper and lower extremities." [Filing No. 17-13, at ECF p. 30.]

Finally, the many medical observations of Snipes' positive straight leg raises conflict with Dr. Brovender's testimony that she has negative straight leg raises. For example, in November 2011, Snipes' physical therapy sessions document positive straight leg raises. [Filing No. 17-7, at ECF p. 51-52.] Overall, the record contains at least four instances of positive straight-leg raising tests prior to April 22, 2014, including March 2011 [Filing No. 17-7, at ECF p. 17], November 2011 [Filing No. 17-7, at ECF p. 52], November 2013 [Filing No. 17-19, at ECF p. 6], and January 2014 [Filing No. 17-14, at ECF p. 30-31], and at least three instances after April 22, 2014, including April 29, 2014 [Filing No. 17-13, at ECF p. 665], July 2014 [*Id.* at 675], and August 2014 [*Id.* at 680]. Alarmingly, Dr. Brovender failed to acknowledge any of these reports.

5

Dr. Brovender's testimony and the medical evidence cannot be reconciled. The ALJ erred by heavily relying on Dr. Brovender's testimony without recognizing these conspicuous factual errors. Procedurally, the ALJ should have confronted the medical evidence that was contrary to Dr. Brovender's testimony. The medical expert's testimony was erroneous, as was the ALJ's reliance on it. Remand is therefore appropriate for the ALJ to obtain a new expert opinion.[1]

### B. Dr. Brovender's RFC

The ALJ also relied on Dr. Brovender's opinion in his RFC determination to conclude that Snipes "could sit six hours and stand or walk six hours." [Filing No. 17-8, at ECF p. 14.] However, Dr. Brovender's actual testimony is not in line with this conclusion. In fact, his testimony is not necessarily in line with itself. Dr. Brovender testified, "She can sit for six hours and she can do a combination of both stand and walk for six hours or three and three, whichever way she was more comfortable." [Filing No. 17-8, at ECF p. 50.] He also testified "the maximum amount of standing" would be three hours, and that the "maximum amount of walking" would be three hours. [Filing No. 17-8, at ECF p. 51.] He then testified that it "may be more comfortable four and two." [Filing No. 17-8, at ECF p. 51.]

Ultimately, it is unclear whether Dr. Brovender found she could stand four and walk two, stand three and sit three, or do a combination for less than six. Dr. Brovender's testimony is open to multiple interpretations. However, it is clear that the ALJ's RFC finding that Snipes

---

[1] The Court is concerned with the accuracy of Dr. Brovender's testimony and his attitude toward Snipes. The serious factual errors and sweeping conclusion that Snipes is not disabled suggests Dr. Brovender may not be able to offer fair and accurate testimony. *Keith v. Barnhart*, 473 F.3d 782, 789 (7th Cir. 2007). On remand, the ALJ should consider designating another medical expert to testify.

could sit, stand, or walk for six hours is not supported by Dr. Brovender's testimony. Thus, the ALJ's RFC is not supported and is erroneous.

Furthermore, the hypothetical proposed to the VE is erroneous because it is based on the unsupported RFC. The hypothetical individual described to the VE is able to "stand and/or walk for a total of 6 of 8 hours, and sit for 6 of 8 hours, provided the individual has the option to alternate to a sitting or standing positing at her option for 1 or 2 minutes each hour." [Filing No. 17-8, at ECF p. 56.] Like the RFC, this hypothetical is not supported by the record. So too, the VE's finding is unsupported, that Snipes' "past work would fit this hypothetical," as well as a cashier, mailroom clerk, and merchandise marker. [Filing No. 17-8, at ECF p. 56-57.] The ALJ relied on a chain of errors to conclude Snipes is not disabled. In particular, the VE testimony is based on an erroneous RFC. [Filing No. 17-8, at ECF p. 21.] Thus, remand is appropriate for the ALJ to determine Snipes' RFC based on the medical evidence in the record.

### C. Snipes may medically equal the listing

Snipes points out that the record contains a significant amount of medical evidence that shows she may medically equal the listing for degenerative disc disease before April 22, 2014. The listing criteria are "compromise of a nerve root or the spinal cord, with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04). Snipes' argument appears well taken.

First, the record contains evidence that Snipes' nerve roots are compromised. A 2010 MRI revealed Snipes has "[b]ilateral lateral recess stenosis with likely impinging on bilateral S1 nerve roots." [Filing No. 17-7, at ECF p. 11.] A 2012 MRI revealed evidence of "subsequent severe bilateral foraminal stenosis" as well as lateral recess stenosis at the same level. [Filing

7

No. 17-7, at ECF p. 74.] A January 30, 2014, MRI revealed disc material which "contacts the S1 nerve roots." [Filing No. 17-13, at ECF p. 73.] During corrective surgery on October 8, 2014, the surgeon reported that "disk fragments were removed, decompressing the S1 nerve root. We did take out the ligament and medial facet joint that were hypertrophied over the lateral recess of S1." [Filing No. 17-13, at ECF p. 54.]

Second, the record contains evidence that Snipes experienced lumbar spinal stenosis resulting in pseudoclaudication. On March 26, 2011, Dr. Brater observed a limited range of motion of the lumbar spine in forward flexion, extension, and lateral bend. [Filing No. 17-7, at ECF p. 17.] On November 6, 2013, Dr. Shukla observed a restricted lumbar range of motion. [Filing No. 17-19, at ECF p. 6.] In October and November 2010, Dr. Kuonen indicated a gait abnormality. [Filing No. 17-7, at ECF p. 8, 14.] In November 2011, Snipes' physical therapy sessions document reduced strength. [Filing No. 17-7, at ECF p. 51-52.] In November 2013, Snipes experienced restricted lumbar range of motion. [Filing No. 17-19, at ECF p. 4-7.]

The ALJ's analysis significantly ignored this evidence at step three. Rather, the ALJ heavily relied on Dr. Brovender's testimony that Snipes does not meet or medically equal the listing. On remand, when the ALJ obtains new medical expert testimony and re-reviews the medical record, he may find that Snipes meets the listing for degenerative disc disease.

**V.    Conclusion**

Remand is appropriate because the ALJ cherry-picked Dr. Brovender's opinion despite clear factual errors, and the ALJ ignored evidence demonstrating that Snipes was disabled before April 22, 2014. The ALJ's reliance on Dr. Brovender's problematic testimony caused both the

RFC and the VE's testimony to be erroneous. On remand, the ALJ should review the evidence to determine whether Snipes meets or medically equals the listing for degenerative disc disease.[2]

For all these reasons, the Court finds that the ALJ committed reversible error. The Court grants Snipes' brief in support of appeal [Filing No. 23] and remands this case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g).

Date: 6/9/2017

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

Joseph R. Wambach
KELLER & KELLER
joew@2keller.com

Nicholas Thomas Lavella
KELLER & KELLER
nlavella@2keller.com

Matthew Frederick Richter
KELLER & KELLER LLP
mrichter@2keller.com

Cristen Elizabeth Meadows
SOCIAL SECURITY ADMINISTRATION
cristen.meadows@ssa.gov

Jill Z. Julian
UNITED STATES ATTORNEY'S OFFICE
jill.julian@usdoj.gov

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov

---

[2] This decision does not discuss Snipes' credibility, as it was not the main issue in this appeal. However, the ALJ should reassess this issue on remand.